# Esterley's Appeal.

1. The Act of February 17th 1858, giving mechanics' liens upon improvements, &c., about mines, &c., in Luzerne and Schuylkill counties, excludes the idea of extension to the real estate, and extends the lien "only to the improvements, &c., erected," &c., and to the interests of the tenant in the freehold.

2. The Act of 1858 is a departure from the principle of the original act, as it makes that a lien upon chattel interests, which before was a lien only on realty.

3. As a result from this departure from the principle of the Lien Law, the Act of 1858 should receive a strict construction and not be carried a step beyond its very words.

4. Statutes in derogation of the common law, and contrary to the general policy of the public, are to be strictly construed.

5. A railroad constructed by a lessee for mining coal in the slope of a mine, is not an improvement or fixture to which a mechanic's lien will attach under the Act of 1858.

January 30th 1867.    Before WOODWARD, C. J., THOMPSON, READ and AGNEW, JJ.    STRONG, J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Schuylkill county*, distributing the proceeds of sheriff's sale of the colliery of William C. Smith.

Smith was the lessee of a colliery.   Prior to 1863 the colliery consisted of a slope worked down " one lift."   The coal having been worked out of this lift, the slope was sunk another lift.   New machinery, &c., including railroad tracks along the new gangways which were driven along the mine from the bottom of the slope, were erected.   For these tracks Daniel L. Esterley the ap-

[Esterley's Appeal.]

pellant, who was a hardware merchant, furnished the spikes, his bill for them amounting to $133.16. Within six months from the date of furnishing these articles, Smith's property was sold under an execution, and the proceeds of sale being brought into court, the auditor, to whom the distribution was referred, reported in favor of Esterley as a mechanic's lien-creditor under the Act of February 17th, 1858, which enacted that the provisions of the Act of " the 16th day of June 1836, and the several supplements thereto, are hereby extended to all improvements, engines, pumps, machinery, screens and fixtures erected or put up by tenants of leased estates on land- of others, in the counties of Luzerne and Schuylkill, and to all mechanics, machinists and material-men, doing work or furnishing the articles or materials therefor : *Provided*, That the lien hereby created shall extend only to the interest of the tenant or tenants, lessee or lessees therein, and to the improvements, engines, pumps, machinery, screens and fixtures, erected, *repaired* or put up by the mechanics, machinists, persons or material-men entering liens thereon."

The Court of Common Pleas on exceptions overruled the report, and awarded the fund to the execution-creditor. Esterley appealed, and assigned this decree for error.

*F. B. Gowen*, for appellant, cited Act of February 17th 1858, Pamph. L. 29 ; Thomas *v.* Smith, 6 Wright 68.

*B. W. Cummings*, for appellee, cited Summerville *v.* Wann, 1 Wright 182 ; Thomas *v.* Smith, 6 Id. 72.

The opinion of the court was delivered, May 13th 1867, by

WOODWARD, C. J.—The Mechanics' Lien Statute of 16th June 1836, is founded upon the common-law principle which gave to every bailee of chattels for hire, who by his labor and skill has imparted an additional value to the goods, a particular lien upon the goods for his reasonable charges. But the statute applies this principle to real estate—houses and lands—and regulates the mode of its application. " Every building erected" shall be subject, says the statute, to a lien for debts contracted for work done and materials furnished, and such lien shall extend to the ground covered by the building and the necessary adjacent curtilage.

This common-law lien is the right to detain a specific chattel until the artisan is compensated for his labor upon it. The statutory lien is an encumbrance upon the " building erected" and its curtilage.

The distinction is important to be kept in view when such supplements to the Act of 1836 as the Act of 21st April 1856, Pamph. L. 496, and the Act of 17th February 1858, Pamph. L. 29, are presented for construction. Both these acts say the Act

4 P. F. SMITH—13

of 1836 shall be *extended* to certain personal chattels. The language of the Act of 1856 is that the Act of 1836 and its supplements " are hereby extended as fully as the same are now applicable to buildings, to every steam-engine, coal-breaker, or parts thereof, pump-gearing, hoisting-gearing, fixture or machinery in and about mills of any kind, iron or coal works, coal-mines and iron-mines."

The objects to which the Act of 1858 extends the Mechanics' Lien Law are described as " all improvements, engines, pumps, machinery, screens and fixtures erected or put up by tenants of leased estates on land of others in the counties of Luzerne and Schuylkill, and to all mechanics, machinists and material-men doing work or furnishing the articles or materials therefor, provided that the lien hereby created shall extend only to the interests of the tenant or tenants, lessee or lessees therein, and to the improvements, engines, pumps, machinery, screens and fixtures erected, repaired or put up by the mechanics, machinists, persons or material-men entering liens thereon.

What do these acts mean? That of 1856 was considered and expounded in Summerville *v.* Wann, 1 Wright 184, where it was held that the lien given by the act was not upon the specific fixture, but upon the real estate to which accessions had been made by the labor and property of a mechanic or material-man. This was an extension of the original Act of 1836 to new classes of real estate, just as prior supplements had extended it to plumbing, curb-stones and pavements, to wharf-building, paper-hanging, gasfitting and grate-setting. That is, the original act was extended to the real estate upon which these different forms of labor and value had been expended. In all these cases the idea of *extension* had been preserved, for if real estate had been improved by any of these fixtures, there was the same reason for charging it as if buildings had been erected upon it. But the Act of 1858, with which we have to do now, excludes this idea of extension to the real estate, by declaring in the proviso that the lien shall extend *only* to the improvements, engines, &c., erected, repaired or put up, and to the interests of the tenant in the freehold. The tenant has only a leasehold which is a chattel interest, and, therefore, the act is a departure from the principle of the original statute insomuch as it makes that a lien on chattel interests which always before was only a lien on the realty.

It results out of this incongruous departure from the principle of the Lien Law that this statute should receive a strict construction and not be carried a step beyond its very words. The inconveniences of attempting to execute liens against chattels were pointed out in Summerville *v.* Wann, and though the legislature have declared, by the Act of 1858, that these inconveniences shall be encountered, still the judicial mind ought to incline to a

strict limitation of the terms of the statute, upon the principle that statutes in derogation of the common law and contrary to the general policy of the public, are always to be strictly construed.

The appellant was a hardware merchant who furnished spikes for a railroad which Smith, the lessee, had sunk to a lower level of the mine. New slopes are common in coal-mines. As tenants progress in mining they find modifications and changes of the interior arrangements convenient and necessary, and their erections, sometimes in one part of the mine and sometimes in another, are all comparatively temporary. Says the act, the lien hereby created shall extend to the leasehold estate and to the particular fixture. "Hereby created." What is the lien created by the enacting clause?

A lien on all "improvements, engines, pumps, machinery, screens and fixtures repaired, erected, or put up." Railroad spikes are clearly no part of engines, pumps, machinery or screens,—are they included in the words "improvements" and "fixtures?" They enter into and form part of the slope railroad, and if that be an "improvement or fixture erected or put up," a lien for spikes may be entered. A repair of an existing improvement or fixture it cannot be, for the railroad was new. Comprehensive as these terms are we conclude that they ought not to be construed to include such a railroad, because of its temporary character. In Thomas v. Smith, 6 Wright 73, we said the word improvements in this act was to have a reasonable construction, and was not to be applied to temporary and insignificant additions, but to such permanent and substantial erections as do essentially augment the interest which the tenant has in the land. The same observation may be applied to fixtures and spikes for a railroad down a slope in the interior of a mine. They do not belong, in our judgment, either to such improvements or fixtures. The railroad itself is as temporary as the use of that slope. A shaft may be sunk next year to the vein of coal which the slope was intended to reach, or a new slope substituted, or this one abandoned and the railroad transferred to some other part of the mine. Such changes are going on continually in coal-mines. And the landlord or a new tenant would be as likely to dispense with the railroad as to use it. Most likely they would either relocate it or rebuild it or supersede it by some other contrivance, not regarding its erection as adding any essential value to the leasehold estate. In its nature it is a mere transient convenience, and an attempt to execute a lien against it would be attended with all the embarrassments pointed out in Summerville v. Wann, and more. Doubtless it might be called an improvement or fixture if we felt that the statute was entitled to a liberal construction, but conceiving that it is not, we are disposed to stop where its words stop and not to push them an inch beyond their indubitable meaning.

We hold, therefore, that such a railroad as these spikes contributed to build does not come within any of the terms of the statute, and, therefore, that no lien was created against the leasehold estate in behalf of the material-man.

The decree is affirmed.