## Orth *v.* West View Oil Co. Jarecki Mfg. Co., Ltd., Appeal.

[Marked to be reported.]

*Mechanic's lien—Oil well—Supplies—Act of Feb.* 17, 1858.

A mechanic's lien was filed indiscriminately " for oil well supplies, oil, gas, water and steam fittings and pipe furnished to said West View Oil Company for said oil wells, rigs, boilers, engines, machinery and fixtures connected therewith and appurtenant thereto ; " and in the descriptive part of the claim the subjects of the lien were described as " consisting of four excavations for wells, and over each of these a wood-rig or derrick, for the purpose of drilling or operating said wells when drilled, three boilers, four engines, connected by proper pipes and fittings to each other and to the' walking-beam and bull-wheels of said derricks and the necessary machinery and fixtures for drilling, pumping, operating, cleaning and caring for said oil wells connected therewith, and forming part thereof." The bill of particulars annexed to the claim contained no statement indicating to which of the " improvements, engines, pumps, machinery. screens and fixtures " the various items of the bill were furnished, nor at which of the wells the articles claimed for were delivered or used. *Held*, that the claim was too uncertain to sustain a lien under the act of Feb. 17, 1858, P. L. 29.

Doubted whether the casing which is placed in an oil well, or the tubing and sand lines. are of such a character as to admit of their being made the subject of a lien.

Argued Nov. 13, 1893. Appeal, No. 291, Oct. T., 1893, by Jarecki Mfg. Co., Ltd., from order of C. P. No. 1, Allegheny Co., Sept. T., 1891, No. 278, fi. fa., dismissing exceptions to auditor's report, distributing proceeds of sheriff's sale, G. C. Orth, Trustee, v. West View Oil Co. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Exceptions to auditor's report, distributing fund raised by sheriff's sale of leasehold estate.

Appellant's lien filed, claimed a lien "on those certain improvements known as four oil wells, together with four rigs, three boilers, four engines and the machinery and fixtures appurtenant to said wells, constructed, erected and put up by said West View Oil Company, tenant thereof, upon the leasehold estate hereinafter described. . . ."

The amount claimed to be due is $782.65 for oil well sup-

plies, oil, gas, water and steam fittings and pipe furnished to said West View Oil Company for said oil wells, rigs, etc.

The lien also averred that the materials were furnished to the contractor and were "used in and formed part of said oil wells, rigs, boilers, engines, machinery and fixtures, . . . . were essential to their completion, and when in place in each well are so connected and appurtenant as to form an indivisible structure . . . . called a complete oil well," and the claim was apportioned among the several wells, $195.65 against each.

The bill of particulars was a general bill for the items of supplies, but there was nothing to show in which of the wells the articles were used.

A. C. Johnston, Esq., was appointed auditor to distribute the fund. He disallowed appellant's claim.

Exceptions to the auditor's report were dismissed, in an opinion by STOWE, P. J.

*Errors assigned* were (1) in dismissing exceptions, quoting them; (2) in confirming the report; and (3) in not awarding claim to appellant.

*A. Leo Weil*, for appellant.—The act of Feb. 17, 1858, P. L. 29, is applicable to any erection or improvement constructed for purposes of commerce, mining, trade or manufacture: Robson's Ap., 62 Pa. 405.

Where the thing furnished is an "engine" or a "boiler," or a "patent hoisting cage," "small and specific things, parts of extensive works," the lien would be limited to these specific things, as improvements, or, where the work done or materials furnished were on or for an improvement separable and distinguishable from the whole works, the lien would be on the specific improvement on which the work was done or for which the materials were furnished, but where the material furnished is used in the construction of the works generally and where thus used forms part of those works, so that to remove the same would destroy the whole works, would disintegrate the improvement or fixture, then in that case the lien is against the whole improvement and the leasehold on which situate: Thomas v. Smith, 42 Pa. 68; Esterly's Ap., 54 Pa. 192; Carey v. Wintersteen, 60 Pa. 395; Schenley's Ap., 70 Pa. 98; St. Clair Coal

Co. v. Martz, 75 Pa. 384; Mountain City Market House & Hall Assn. v. Kearns & Co., 103 Pa. 403; Schmidt & Co. v. Armstrong, 72 Pa. 355; Reed v. Clement, 3 W. N. 53; Ely v. Wren, 90 Pa. 148.

The filing of the claim was necessary, the sheriff's sale having taken place prior to the expiration of the statutory period for filing; Johnson, Mechanic's Lien Law, 410, 411.

It is not necessary that the materials furnished should have been used, provided that they were of such a character as to justify their use in the construction of the building: Odd Fellows Hall v. Masser, 24 Pa. 507; Johnson, Mechanic's Lien Law, 188.

This rule ought to apply to material furnished to a leasehold of the character that would enter into the construction of the improvements as a whole.

The act should be construed, if not liberally, at least justly: Dame's Ap., 62 Pa. 420.

*James Bredin,* for appellees.—The act of 1858 did three things: It extended the lien previously confined to building on land owned in fee to improvements, engines, pumps, machinery, screens and fixtures erected by tenants on land of others; limited the lien to the interest of the lessee, and confined it to the improvements, engines, pumps, machinery, screens and fixtures erected or put up by the person filing the lien. The act gives no lien on the leasehold. "It confines the lien clearly to the interest of the lessee in the improvement and machinery upon which his (the claimant's) labor and services were bestowed." St. Clair Coal Co. v. Martz, 75 Pa. 384.

As said by this court in Wetmore's Ap., 91 Pa. 279, the word "improvement" has no place in the statute—it cannot be properly used to signify any particular thing for which a lien may be filed. It points to no specific thing except with the context.

It is true that in Esterley's Ap., 54 Pa. 192, this court, in the opinion refusing to allow a lien for a railroad in the slope of a mine, does refer to the act of 1858 as saying "that the lien hereby created shall extend to the leasehold estate," and again "to the interests of the tenant in the freehold," but no such words are found in the act itself, and that question was not before the court.

In Ely v. Wren, 90 Pa. 151, this court said that the act limits the lien to the interest of the tenants in the specific improvements and machinery upon which the services and labor are bestowed, or for which materials are furnished, citing St. Clair Coal Co. v. Martz, 75 Pa. 384.

The casing is no more permanent than a railroad in the slope of a mine, and practically does not admit of a lien.

Robson's Appeal, 62 Pa. 405, on which appellant relies, was practically overruled in the later cases of St. Clair Coal Co. v. Martz, 75 Pa. 384; Ely v. Wren, 90 Pa. 148.

OPINION BY MR. JUSTICE GREEN, December 30, 1893:

The claim of lien in this case is filed indiscriminately "for oil well supplies, oil, gas, water and steam fittings and pipe furnished to said West View Oil Company for said oil wells, rigs, boilers, engines, machinery and fixtures connected therewith and appurtenant thereto," and in the descriptive part of the claim the subjects of the lien are described as "consisting of four excavations for wells, and over each of these a wood-rig or derrick, for the purpose of drilling or operating said wells when drilled, three boilers, four engines, connected by proper pipes and fittings to each other and to the walking beam and bull wheels of said derricks and the necessary machinery and fixtures for drilling, pumping, operating, cleaning and caring for said oil wells, connected therewith and forming part thereof."

The bill of particulars annexed to the claim contains no statement indicating to which of the "improvements, engines, pumps, machinery, screens and fixtures," the various items of the bill were furnished, nor at which of the wells the articles claimed for were delivered or used. The bill is simply a general bill to the West View Oil Company for numerous minor articles, together with a few larger items of casing, and tubing and sand lines, and the only attempt at classification is a designation of the persons to whom the deliveries were made. It would be impossible to tell from anything contained in the claim of lien what things, or whether any things, were furnished to any of the engines, or to any of the boilers, or to any of the machinery or fixtures. Presumably the casing was furnished to the wells, but whether to one or all, or to which, does not appear. It might be inferred that the tubing lines and sand

lines were worked from the derricks, but there is no statement to that effect, or for which of the wells they were furnished. There are numerous items of unions, cups, cocks, nipples, washers, valves, coupling and bolts, but nothing to show where any of them were used, or whether they were furnished to any particular engine, boiler, rig, fixture or improvement.

In the case of Ely v. Wren, 90 Pa. 148, a very similar kind of claim to this was filed by Wren, the claimant, "for a debt due to him for work done and material furnished by him, for and about the erection and construction, and upon the credit of improvements, engines, pumps, machinery, screens and fixtures put up or erected by E. B. Ely & Co., tenants of a leased estate on land of another in the said county of Carbon."  A lien was claimed against the improvements, engines, pumps, machinery, etc., and against the leasehold estate of the tenants, all of which was fully described.  A bill of particulars with a schedule of the machinery, etc., on the premises was annexed. This claim of lien was held by this court to be so defective in its want of particularity and precision that it was ordered to be stricken from the record.  The present Chief Justice, delivering the opinion, said: " The claim was thus filed not only against the interest of E. B. Ely & Co. in the improvements, engines, etc., but against the improvements, engines, etc., themselves; and also against a number of undefined structures and articles adjacent thereto, upon which it is not claimed that any work was done, or for which any materials were furnished by the claimants.  It was not confined, as the act provides, to the specific improvements upon which the work was done, or for which materials were furnished. . . . There is an absence of that certainty and precision which should characterize a statement that forms the basis of a special lien, which, if not otherwise satisfied, is designed to be enforced by a judicial sale, resulting in a transfer of title.  The proceeding is in rem and the claim should be so certain and definite as to indicate with at least reasonable precision the property that is to be subjected to the lien, and the extent thereof.  Without this it fails to furnish sufficient data for the entry of a judgment upon which the levari must issue for the sale of the property."

Applying this principle to the present case the practical difficulty in the way of enforcing the lien is apparent at once.

The largest item of the bill of particulars is a charge of $344.51 for a considerable quantity of casing. It is of course obvious that this item could not have been furnished for any rig, boiler, engine, machinery, fixture or improvement, and could only be used in a well. It would therefore not be a lien on any of the machinery, etc., and could not be a lien at all except possibly against a well. But which well? The claim does not say, or whether it was furnished to all the wells or any number of them less than all. If it was furnished for one or two of course the other wells which had none of it, and might be far distant, could not be subjected to any lien for it, and could not be sold to pay for it. The other largest items are for tube lines and sand lines. These aggregate $267.37, and together with the casing amount to $611.88, and the entire claim is but $782.65. It is manifest that these lines could not have been furnished to any one of the three boilers, or any one of the four engines, or to any of the machinery, screens, fixtures or improvements. They are only for use in the wells, and are entirely loose and unfastened to the leasehold premises, or any of the machinery. And yet if this lien were sustained the whole of the leasehold, and all of the boilers, engines and machinery could be sold for the nonpayment of this item. Nor is it stated for what one or more wells these lines were furnished or used, and this simply increases the confusion.

In St. Clair Coal Co. v. Martz, 75 Pa. 384, a claim of lien was filed against a leasehold and machinery, etc., under this same act of 1858. Mr. Justice SHARSWOOD said in the opinion: "The claim of the plaintiff was for work done in the erection of a patent hoisting and dumping cage, yet the claim filed is against the entire leasehold in the colliery. The act of assembly gave the plaintiff no such lien. It confines the lien clearly to the interest of the lessees in the improvement and machinery upon which his labor and services were bestowed."

Independently of the foregoing considerations, it is extremely doubtful if either the casing which is placed in an oil well, or the tubing and sand lines are of such a character as to admit of their being made the subject of a lien. The casings may or may not remain in the well. If oil is not obtained they are liable to be, and probably are, taken out and removed to some other well. As for the tubing and sand lines they are of course

unattached to any machinery and are only for temporary use at best. In Esterley's Appeal, 54 Pa. 192, we held that, under the act of 1858, a lien could not be filed for a railroad track laid in the slope of a coal mine. Mr. Chief Justice WOOD-WARD, in delivering the opinion, said: " In Thomas v. Smith, 6 Wright, 73, we said the word 'improvements,' in this act, was to have a reasonable construction, and was not to be applied to temporary and insignificant additions, but to such permanent and substantial erections as do essentially augment the interest which the tenant has in the land. The same observation may be applied to fixtures and spikes for a railroad down a slope in the interior of a mine. They do not belong, in our judgment, either to such improvements or fixtures. The railroad itself is as temporary as the use of that slope. . . . In its nature it is a mere transient convenience, and an attempt to execute a lien against it would be attended with all the embarrassments pointed out in Summerville v. Wann, and more. Doubtless it might be called an improvement or fixture if we felt that the statute was entitled to a liberal construction, but, conceiving that it is not, we are disposed to stop where its words stop, and not to push them an inch beyond their indubitable meaning."

These observations apply with, if possible, a greater force to the casings and lines used in boring and operating oil wells. When it is considered how large a proportion of the wells are only " dry holes," and are therefore abandoned at once and all the machinery and appliances removed, and how large is the number of wells that yield so small a product as to be unprofitable to work, and they also are abandoned, and how many wells that have been for a time profitable to work have soon run down to an unprofitable production, and how many become exhausted in a short time, it is readily understood that no character of permanency can be attributed to such articles as casings and tubing and sand lines. These are all as capable of use in one well as another, and may be and are constantly transferred from wells where they are of no use to others where they may be of service.

In St. Clair Coal Co. v. Martz, supra, we held that no lien could be filed against a hoisting and dumping cage used in the shaft of a coal mine, an appliance which has much more of per-

manence and of continuous use in its nature than the casings or lines used at oil wells.

Upon a consideration of the whole case we are of opinion that the treatment of this claim by the auditor and court below was right.

Decree affirmed at the cost of the appellant.